**MONARCH LUGGAGE CO., INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 85–11–01641.**

United States Court of International Trade.

June 28, 1989.

Grunfeld, Desiderio, Lebowitz & Silverman, Steven P. Florsheim, New York City, for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Kenneth N. Wolf, for defendant.

## OPINION

MUSGRAVE, Judge.

### BACKGROUND

This action contests the United States Customs Service's (Customs) appraisement of certain entries of various luggage articles imported by plaintiff from Taiwan during the years 1981, 1984, and 1985. The Court has jurisdiction under 28 U.S.C. § 1581(a).

The parties agree that the proper basis of appraisement is Transaction Value, as defined in Section 402(b) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1401a(b) (1982). Plaintiff claims that the invoice F.O.B. values include "buying commissions" paid by plaintiff to the Taiwanese companies Krasa and Prosperous, which plaintiff claims are *bona fide* buying agents. Plaintiff contends that the entries should be reliquidated with duties assessed upon the invoice F.O.B. values, *excluding* the alleged buying commissions and requests that defendant be directed to refund to plaintiff the difference between the duties assessed upon reliquidation and the duties upon the invoice F.O.B. values, plus interest. Defendant contends that the subject luggage was properly appraised based upon the invoice F.O.B. values, identified on the invoices and/or debit notes attached to the entry papers.

### DISCUSSION

■ It is well settled that *bona fide* buying commissions are not a proper element of dutiable value. *Rosenthal–Netter, Inc. v. U.S.*, 12 CIT ——, ——, 679 F.Supp. 21, 23 (1988), *aff'd*, 861 F.2d 261 (1988); *Jay–Arr Slimwear, Inc. v. U.S.*, 12 CIT ——, ——, 681 F.Supp. 875, 878 (1988). However, plaintiff bears the burden of proof in establishing the existence of a *bona fide* agency relationship and that the charges paid were *bona fide* buying commissions. *New Trends, Inc. v. U.S.*, 10 CIT 637, 640, 645 F.Supp. 957, 960 (1986); *See also, Pier 1 Imports, Inc. v. U.S.*, 13 CIT ——, Slip Op. 89–25 (February 23, 1989).

■ Plaintiff presented two witnesses at trial: Donald Liebowitz, Executive Vice President of plaintiff Monarch Luggage, and Richard Young, Managing Director of Prosperous and Krasa. Mr. Liebowitz testified that Monarch Luggage's primary business involves the importation of luggage products from the Far East. According to Mr. Liebowitz, the luggage importation business requires a "presence" in the exporting country in order to be successful. Mr. Liebowitz travels to Taiwan between three and six times a year for several weeks at a time. During these trips Mr. Liebowitz visits many of the various luggage manufacturers in Taiwan in order to meet them, to inspect their facilities, to place orders, to negotiate terms, and the like. This witness further testified that notwithstanding these frequent visits, a continuing presence in the form of a local agent who is familiar with the industry is also necessary.

Mr. Liebowitz testified that he met Mr. Young, Managing Director of both Prosperous and Krasa [1], during his first visit to Taiwan in 1977. At the end of this trip Mr. Young was told that his companies could be Monarch's agents in Taiwan. Plaintiff had a verbal agreement with Mr. Young until 1981, at which time the agreement was put in writing.

The agreement sets out the duties of Prosperous, referred to as "the Agent". The agreement sets out *inter alia* the following terms with respect to the duties of the agent. The agent is to attempt to obtain the best available source for merchandise. The agent may, only at the direction of the Principal, place orders with manufacturers. The agent shall arrange and coordinate payment to the manufacturer pursuant to the explicit instructions of the Principal. Upon instruction by the Principal, the agent shall arrange for inland freight storage, insurance, and the like. The agent shall visit the manufacturers in order to inspect the quality of the merchandise, and shall assist the Principal

---

**1.** Prosperous and Krasa are "sister" corporations, owned and operated by the same persons, at the same address, and will be referred to hereinafter solely as Prosperous.

in the return of merchandise deemed to be defective. In the case of returned merchandise, the manufacturer, and not the agent, is required to absorb the loss. The agreement further states that the agent shall never act as a seller in any transaction involving the principal.

All of the above services are characteristic of those rendered by a *bona fide* agent. *See, U.S. v. Nelson Bead Co.*, 42 CCPA 1975, C.A.D. 590 (1955); *Carolina Mfg. Co. v. U.S.*, 62 Cust.Ct. 850, R.D. 11640 (1969). But, of course, an agreement such as described above is not in itself dispositive of the issue. *Rosenthal–Netter*, 12 CIT at ——, 679 F.Supp. at 26. Whether the relationship is one of agent-principal "is to be determined by the substance of the transaction—not by the labels the parties attach to it." *Pier 1 Imports, Inc. v. U.S.*, 13 CIT ——, Slip Op. 89–25 at 13 (quoting *Dorf Int'l, Inc. v. U.S.*, 61 Cust.Ct. 604, 610, A.R.D. 245, 291 F.Supp. 690, 694 (1968)).

At trial both witnesses testified as to the nature of their relationship and established to the satisfaction of the Court that the activities performed by Prosperous and Monarch were indicative of a agent-principal relationship generally. There is, however, one further factor which must be considered.

The merchandise at issue was entered into the United States during the years 1981, 1984 and 1985. Mr. Young testified, and the entry documents show, that during 1981 Prosperous' commission was deducted from the price paid for the merchandise. That is, the commission was calculated by dividing the F.O.B. price by .96. In response to the questioning by defendant's attorney at trial, Mr. Young admitted that this method of calculating its commission was improper. According to the statute, the transaction value of imported merchandise is "the price actually paid or payable for the merchandise when sold for exportation to the United States ..." 19 U.S.C. § 1401a(b)(1) (1982). An amount which is paid for imported merchandise which is part of the purchase price is properly included in the dutiable value. *See, BBR Prestressed Tanks, Inc., et al. v. U.S.*, 64 Cust.Ct. 787, 788, A.R.D. 265 (1970). Because the amounts which plaintiff claims were buying commissions were part of the price paid for the merchandise for entries made prior to the change in invoicing procedures in the latter part of 1981, these amounts were properly included in the dutiable value for that period.

■ Mr. Young stated that the method of calculating Prosperous' commission described above ended some time during the latter half of 1981, though it is unclear what the exact date was. Since that time the commission has been calculated by multiplying the F.O.B. price by .04, and is paid for separately by check from Monarch to Prosperous. Thus, since the change in the method of calculation, Prosperous' commission has been an amount separate from and in addition to the price paid for the merchandise, and is therefore not properly included in the dutiable value of the merchandise.

It is troublesome that Prosperous calculated its purported buying commission by a method, or methods, prior to "late 1981", which method or methods made the commissions dutiable as part of the F.O.B. value, and continued this practice from sometime in 1977 until almost 1982. And a mere change in the method of invoicing, if it is only in form and really not in substance, would not suffice to change Prosperous from a selling agent, if it had been one, to a buying agent.

However, it appears to the Court that the form followed the actual substance, rather than the reverse. Unrebutted testimony indicates that Prosperous at no time had title to any of the merchandise in question. According to the same unrebutted testimony, Prosperous at no time bore a risk of loss. Further, at no time does Prosperous appear to have had the authority to, nor did it, independently purchase or stock merchandise for resale. Thus it appears that Prosperous acted at all times as a *bona fide* buying agent, rather than as a seller, although it was not until the principal in the transaction, Monarch, sent its general counsel to Taiwan to consult with U.S. Customs representatives there as to the proper

method of invoicing that the form was changed to comport with the substance of the transaction. Accordingly, the Court holds that all of the attributes of a *bona fide* purchasing agent being present, Prosperous is held to be a buying agent, and the transactions which are the subject of this litigation entered *subsequent to* the change to a proper invoicing procedure in late 1981, should be reliquidated excluding the buying commission from dutiable value.

IT IS SO ORDERED.

### JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the entries which are the subject of this action entered *subsequent* to the change to a proper invoicing procedure in late 1981 shall be reliquidated, with duties assessed upon the invoice F.O.B. values, excluding buying commissions, and defendant is directed to refund to plaintiff the difference between the duties assessed upon liquidation and the duties upon the invoice F.O.B. values, plus interest.